UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:   Aldo Abad

            Debtor                            CASE NO. 12-3028

                                             CHAPTER    7

Samuel K. Crocker, U.S. Trustee

            Plaintiff

vs.

Aldo Abad

            Defendant                       Adv. Proc. No. 12-3037

---

## MEMORANDUM-OPINION

---

THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of the cause of action brought by the U.S. Trustee's Office ("Plaintiff") against Aldo Abad ("Defendant") under 11 U.S.C. §§727 (a)(2)(B) and 727(a)(4)(A).  For the reasons set forth below, the Court determines that Abad is not entitled to a discharge under 11 U.S.C. §727.  By virtue of 28 U.S.C. § 157(b)(2)(I), this is a core proceeding.  The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

FINDINGS OF FACT

It is an unfortunate fact of life that folks do not always tell the truth and that, indeed, some persons rarely tell the truth.  And, while this Court finds that in practice the vast majority of debtors are "honest but unfortunate," it occasionally comes across a dishonest and calculating debtor.  This

1

is one of those cases. On January 24, 2012, Abad personally used TurboTax tax preparation software to file his federal and tax returns. Abad's tax return entitled him to a federal tax refund of $27,469.

The next day, January 25, 2012, Abad's attorney Scott Wantland ("Wantland") filed a chapter 7 bankruptcy petition on Abad's behalf. In Schedule B of his bankruptcy petition Abad listed his personal property, including an "anticipated" tax refund of $4,500. (Pl.'s Ex. 3, at Schedule B.) Abad did not at any time attempt to amend his schedules.

On February 8, 2012, Abad received a net federal tax refund of $26,488 (the original $27,469 less a child support intercept of $981), which was deposited into a checking account that Abad held at Chase Bank (the "Tax Refund"). Abad then transferred portions of the Tax Refund to a second checking account and a savings account, also at Chase Bank.[1] Abad later testified that he used a portion of the Tax Refund to repay his ex-wife's credit card debt and a portion to pay for daily living expenses. Abad also testified that he did not use any of the Tax Refund to pay creditors listed on his bankruptcy petition.

On February 28, 2012, Abad, accompanied by Wantland, attended his 341 meeting of creditors. At the 341 meeting, Michael Wheatley ("Wheatley"), chapter 7 panel trustee, and Gary Grimes, of the United States Trustee's Office, interviewed Abad regarding his bankruptcy case. Wheatley asked Abad whether there were any errors or omissions in Abad's bankruptcy petition. Abad answered "no." (Pl.'s Ex. 4, at 4.) Wheatley then asked Abad about his taxes, as follows:

Wheatley: "Have you filed your 2011 taxes yet?"

Abad: "No."

(*Id.*, at 5.) Later in the 341 meeting of creditors, Grimes and Abad had the following exchange:

Grimes: "And in 2011, you made a hundred and ninety-seven thousand; [sic] is that correct?"

Abad: "I have it here, but I'm going to have to pay taxes, so that's why I haven't filed."

---

[1]Although not considered here, the Court notes that Abad initially testified at his 341 meeting that he had only one bank account.

(*Id.*, at 11.)  Abad did not mention the Tax Refund when Wheatley questioned him regarding his income:

> Wheatley: "And [unemployment compensation] is your only source of income?"
>
> Abad: "Yes."

(*Id.*, at 8.)  Wheatley then noted that Abad's unemployment compensation income did not meet Abad's stated monthly expenses:

> Wheatley: "How you making up the difference?"
>
> Abad: "I've had a little bit of savings and I borrow money from my sister for child support."

(*Id.*, at 9.)

Thus, during the 341 meeting, Abad twice affirmatively stated that he had not filed his tax returns and failed to disclose that he had recently received a substantial federal tax refund when questioned about his income and ability to pay his expenses.

Apparently, the U.S. Trustee's Office had heightened concerns regarding Abad's case, because on March 28, 2012, the U.S. Trustee's Office filed a motion for a 2004 examination. While not uncommon, it is certainly not typical for the U.S. Trustee to pursue a 2004 examination in a chapter 7 case.  On March 30, 2012, the Court granted the U.S. Trustee's motion and ordered Abad to submit to a 2004 examination.

On April 20, 2012, Abad, again accompanied by Wantland, submitted himself to the Rule 2004 examination.  At the examination, assistant U.S. Trustee Joseph Golden ("Golden") and Grimes—now armed with some of Abad's bank account statements—asked Abad about certain large deposits into his bank account.  Abad replied that he had received "more back" in tax refunds than the $4,500 he had anticipated on his bankruptcy petition and that he in fact received a tax refund that "was like $26,000." (Def.'s Ex. 3, at 39.)  Later during the 2004 examination, Abad confirmed that he had received the Tax Refund on February 8, 2012.  When Golden pointed out that Abad had given different testimony at his 341 meeting, where he denied having filed a tax return, Abad replied that

3

he could not explain his testimony at the 341 meeting and that it was "wrong." (*Id.* at 63.)  Before leaving the 2004 examination, Abad and Wantland agreed to provide additional documentation to the U.S. Trustee's Office, including Abad's 2011 federal tax return.  Abad also signed a Form 4506T, authorizing the U.S. Trustee's Office to obtain his tax records from the Internal Revenue Service ("I.R.S.").

On or around April 27, 2012, Wantland appeared at the U.S. Trustee's Office with a document that was purported to be Abad's tax return.  This return or draft return was inaccurate; it did not entitle Abad to a tax refund, but instead showed a tax liability of over $6,000.  The U.S. Trustee's Office subsequently received documentation from the I.R.S., and confirmed that Abad had in fact received a tax refund of $26,488.

The U.S. Trustee's Office initiated an adversary proceeding against Abad, objecting to Abad's chapter 7 discharge under 11 U.S.C. §§ 727(a)(2)(B) and 727(a)(4)(A).  The U.S. Trustee's Office alleged that Abad intentionally misled panel trustee Wheatley and the U.S. Trustee's Office about the Tax Refund in order to defraud creditors.

The U.S. Trustee's Office deposed Abad—now accompanied by new counsel Marque Carey—on October 15, 2012.  At the deposition, assistant U.S. Trustee Scott Goldberg ("Goldberg") pressed Abad regarding the way Abad had presented his tax information on the bankruptcy petition and at the 341 meeting.  Abad testified at the deposition that the statement on his petition that he anticipated a tax refund of only $4,500 represented a sincere educated guess, made to his attorney Wantland more than a week before the petition was filed on January 25, 2012.  Abad denied any knowledge of the requirement that his bankruptcy schedules be amended for accuracy.

Abad also testified that his statements at the 341 meeting of creditors—when he repeatedly denied having filed a federal tax return—were false but honest mistakes.  When asked how he could have made these false statements, Abad suggested that he "might not have understood the question." (Def.'s Ex. 4, at 32.)  Abad did mention that he "owed [taxes to] the state of Kentucky" and implied that this might have had something to do with his false statements at the 341 meeting but did not elaborate as to how his tax liability to the state of Kentucky could have caused him to mistakenly believe that he had not filed federal income taxes.  (*Id.* at 35.)  Abad also repeatedly claimed that he

4

could not remember what happened in February of 2012, either with regard to his 341 meeting testimony or his receipt of the Tax Refund.

Finally, Abad explained that the inaccurate tax return received by the U.S. Trustee's Office was the result of an e-mail error. According to Abad, he had accidentally e-mailed Wantland an earlier "draft" tax return, and had not realized his mistake. Wantland then purportedly turned over the draft tax return to the U.S. Trustee's Office without Abad realizing what had happened.

At the December 3, 2012, trial of this Adversary Proceeding, Abad testified on his own behalf, appearing testy and defensive. Abad defended his false statements and the presentation of inaccurate documents to the U.S. Trustee's Office as good-faith mistakes. Abad repeated the assertion made at his deposition, that the inaccurate $4,500 estimate of his tax refund presented in his bankruptcy petition was an educated guess, made more than a week before the filing of his tax return and bankruptcy petition. Abad also repeated the assertion first made at his deposition that the delivery of the inaccurate tax return had been caused by his failure to attach the correct file to an e-mail sent to Wantland.[2]

At trial, Abad also trotted out a new explanation as to why he had denied having filed his 2011 tax returns at the 341 meeting. Abad now claimed that the word "filed," as used during the 341 meeting, was subject to varying interpretations. His account went as follows: Wheatley and Grimes used "filed your 2011 taxes" to mean, "submitted tax returns to the I.R.S. or other taxing authority;" but Abad's own personal interpretation of the word "filed" meant something much different—something more like, "completed all tax matters for the year." Abad testified that he had, shortly before the 341 meeting, received a notice from the state of Kentucky demanding additional tax documentation. According to Abad, the fact that he still had tax business pending with the state of Kentucky meant, to him, that he had not "filed" his taxes.

The Court cannot accept this new and obviously "ginned up" explanation. Abad is far too sophisticated a debtor to claim confusion about the word "filed." Abad testified at trial and earlier that he attended college for two years in San Antonio, Texas, where he studied business. Abad has

---

[2]Abad did not, however, call Wantland as a witness to corroborate this explanation.

since enjoyed a remunerative career in the auto sales industry.  According to testimony Abad gave at his 2004 examination and his pre-trial deposition, Abad has worked in auto sales finance since 2004, has received specialized training in auto sales finance, and has served as finance director at various car dealerships.  As of April, 2012, when Abad appeared at his 2004 examination, he was earning $3,500 per week.  Abad is a high-earning and relatively sophisticated debtor, and the Court is completely unimpressed by his defense of good-faith ignorance as to the concept of filing a tax return.

Moreover, Abad's defense of honest confusion or misunderstanding holds up poorly when considered in the light of his other statements at the 341 meeting, the 2004 examination, and the pre-trial deposition.  At the 341 meeting, Abad not only repeatedly denied having filed a tax return; he also failed to mention his tax *refund* when questioned about his sources of income.  Abad did not provide any explanation for this omission in his testimony, and it cannot be explained by his alleged ignorance of the meaning of the word "filed."  Likewise, Abad made no mention of his tax refund when asked at the 341 meeting whether anything on his bankruptcy petition needed to be amended.  Later, at the 2004 examination, Abad was confronted with the falseness of his 341 meeting statements, but made no mention of any confusion or misunderstanding: Abad only stated that he could not explain the inconsistency of his testimony, and admitted that he was "wrong."  Finally, at his pre-trial deposition, Abad repeatedly stated that he did not remember what he was thinking during his 341 meeting.  Obviously, Abad's theory of honest misinterpretation of the word "filed" arose on the eve of trial, after Abad had had multiple opportunities to explain himself.  Consideration of Abad's testimony in light of his previous statements only makes him appear less credible.

Having found that Abad's testimony that he made an honest mistake is not credible, as more fully discussed below, the Court finds that Abad made false statements at his 341 meeting intentionally in order to conceal the  Tax Refund.[3]

CONCLUSIONS OF LAW

---

[3] Because the Court finds that Abad made intentional false statements at his 341 meeting of creditors, it is unnecessary to consider whether Abad intentionally caused the inaccuracies in his bankruptcy petition and draft tax return provided to the U.S. Trustee's Office.

Plaintiff seeks a denial of Defendant's discharge under 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(4)(A). Because the Court concludes that Defendant should be denied a discharge under 11 U.S.C. § 727(a)(4)(A), it is unnecessary to consider Defendant's actions in light of 11 U.S.C. § 727(a)(2)(A).

In order to deny a debtor discharge under 11 U.S.C. § 727(a)(4)(A), a plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *See Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). Defendant here cannot, and indeed does not, dispute that he made a false statement, under oath that was materially related to his bankruptcy case–Abad's assertion at the 341 meeting that he had not yet filed his 2011 taxes despite having already filed both federal and state tax returns and having received the Tax Refund from the I.R.S.

As is evident from the Court's findings of facts above, Defendant knew that his assertion at the 341 meeting that he had not filed his 2011 taxes was false and that he made such assertion with fraudulent intent. In the context of 11 U.S.C. § 727(a)(4)(A), the Sixth Circuit noted in *Keeney* that complete financial disclosure is a prerequisite to the privilege of discharge and that intent to defraud "'involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression.'" *Id.* at 685-86 (citing *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir. 1999) and *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)). "A reckless disregard as to whether a representation is true will also satisfy the intent requirement." *Id.* at 686.

Here, Defendant certainly at least acted with reckless disregard at his 341 meeting when he denied having filed his 2011 tax returns. Given the nature and timing of Abad's actions, however, and the evolution of Abad's explanation of his actions, the Court believes that Abad deliberately attempted to deceive his creditors, Plaintiff and the Court.

As discussed above, on January 24, 2012, Abad personally prepared and submitted his own 2011 tax returns using Turbo Tax software and just about three weeks prior to the February 28, 2012, 341 meeting *received* a more than $26,000 federal tax refund. At the 341 meeting, however, he denied having even filed his returns and made no mention of the Tax Refund despite being asked directly about his income. Apparently Abad hoped that, as with most bankruptcy cases, inquiry into

7

his financial affairs would end at the 341 meeting.

Unfortunately for Abad, the U.S. Trustee had more than typical concern about his financial affairs and took the somewhat uncommon step of seeking a Rule 2004 examination of Abad. At the Rule 2004 examination, faced with the fact that the U.S. Trustee had uncovered documentary evidence of Abad having received the Tax Refund–i.e. that he had lied at his 341 meeting–Abad had no choice but to admit that his testimony at the 341 meeting had been "wrong." If Abad harbored any hopes that simply admitting that he had been "wrong" would end the inquiry, his hopes were dashed when the Plaintiff initiated this Adversary Proceeding.

At Abad's deposition in this Adversary Proceed, Abad attempted damage control. He again admitted that he had falsely denied having filed tax returns at his 341 meeting but now added an "explanation" that he "might not have understood the question." He also claimed at the deposition that he could not then recall much about the 341 meeting or his receipt of the Tax Refund. That explanation did not satisfy the Plaintiff and this matter proceeded to trial.

Between Abad's deposition and the trial in this Adversary Proceeding, a curious thing happened. Defendant had an "epiphany" and suddenly "remembered" exactly why he had denied having filed his tax returns at the 341 meeting. At trial, Abad spun an incredible yarn–that he had "interpreted" the question about having filed his taxes as asking him whether his dealings with all of the relevant taxing authorities had been completed. As discussed above, this Jesuitical and, frankly, pungent, explanation utterly lacks credibility. Moreover, Abad's demeanor on the witness stand betrayed him. Apparently hoping that chagrin at getting caught in a lie would play to the Court as moral outrage at being falsely accused, Abad appeared testy and defensive. Unfortunately for Abad, this Court has seen enough liars to know the difference and recognize when a witness is being, to put it politely, "evasive."

For the foregoing reasons, the Court concludes that Defendant should be denied his discharge under 11 U.S.C. § 727(a)(4)(A). A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: January 25, 2013

8